Sandy SAUKKOLA, widow of Paul B. Saukkola, deceased, Respondent,

v.

AIRTEX INDUSTRIES and Liberty Mutual Insurance Co., Relators.

No. 81–125.

Supreme Court of Minnesota.

Dec. 31, 1981.

Rehearing Denied Feb. 8, 1982.

Hansen, Dordell, Bradt & Odlaug, St. Paul, for relators.

Hvass, Weisman & King and Richard A. Williams, Jr., Minneapolis, for respondent.

SCOTT, Justice.

This is an appeal from a decision of the Workers' Compensation Court of Appeals wherein certain issues concerning the coordination of social security and workers' compensation benefits between a widow and a child dependent and benefits payable to a child after the remarriage of a surviving spouse were decided. We affirm in part and reverse in part.

The following statement of facts by the relator is uncontested:

On March 14, 1977 Paul B. Saukkola was employed by Airtex Industries as a materials handler, and his wage for purposes of the Minnesota workers' compensation law was $194.00 per week. Airtex Industries was insured for its workers' compensation liabilities by Liberty Mutual Insurance Company. Mr. Saukkola sustained an injury on March 14, 1977 which ultimately caused his death, on March 31, 1977.

The injury, and subsequent death of Mr. Saukkola, were accepted as compensable by the employer and insurer, and subsequent to his death payment of dependency benefits was commenced to Mr. Saukkola's dependents. The employe left surviving, as dependents, his widow Sandy J. Saukkola and one son, Jamie Brian Saukkola, born September 15, 1975.

A dispute subsequently arose between the dependents and the insurer, concerning the proper amount of dependency benefits payable. As a result of the employe's death, the dependents received certain governmental survivor benefits, and the dispute concerned the method of computing the dependents' entitlements in light of those governmental survivor benefits.

The governmental survivor benefits received by the dependent child Jamie, and by Sandy Saukkola as "mother's benefits" are as follows:

|  | Monthly Benefits Paid | | Total Benefits Paid | |
|  | To Widow | To Child | Monthly | Weekly |
|---|---|---|---|---|
| 3/31/77 – 5/31/77 | $334.70 | $334.70 | $669.40 | $154.48 |
| 6/1/77 – 5/31/78 | 354.50 | 354.50 | 709.00 | 163.62 |
| 6/1/78 – 6/30/79 | 377.60 | 377.60 | 755.20 | 174.28 |
| 7/1/79 – 4/30/80 | 415.00 | 415.00 | 830.00 | 191.54 |
| 5/1/80 – 5/31/80 | 0.00 | 415.00 | 415.00 | 95.77 |
| 6/1/80 – 7/22/80 | 315.00 | 415.00 | 730.00 | 168.46 |
| 7/22/80 – 9/30/80 | 0.00 | 415.00 | 415.00 | 95.77 |

A hearing was held on April 13, 1979. The compensation judge correctly determined that, together, the dependents were entitled to benefits equal to 60% of the employe's average weekly wage at the date of death. The compensation judge allocated ⅔ of those benefits, or 40% of the employe's wage to the surviving spouse, and ⅓ or 20% of the weekly wage to the dependent child. That allocation is not contested in this proceeding.

In computing the offset allowed for governmental survivor benefits being received by the dependents, the compensation judge determined that all of those benefits were received by Jamie, even though one half of the benefits were actually paid to the surviving spouse as "mother's benefits." The compensation judge then calculated the amount of the offset by comparing the amount of social security death benefits received by Jamie, together with his 20% workers' compensation entitlement, against 100% of the decedent's weekly wage. As a result, relators received no offset for those governmental survivor benefits.

The employer and insurer appealed the decision to the Workers' Compensation Court of Appeals, claiming that the total governmental survivor benefits together with the workers' compensation entitle-

ment should not, with respect to Jamie, exceed his allocated 20% of the decedent's wage. While this case was pending before the Court of Appeals, Sandy Saukkola remarried on July 22, 1980, thus raising an issue concerning the benefits payable upon remarriage of the dependent surviving spouse.

The Court of Appeals agreed with relators concerning the method of computing the setoff for governmental survivor benefits and corrected the determination of the compensation judge. With respect to the issue of benefits payable after remarriage, the Court of Appeals determined that Jamie was to thereafter be considered an orphan, entitled in his own right to benefits equal to 55% of the decedent's wage.

The issues before us are:

(1) Whether a dependent child becomes an "orphan" within the meaning of the Minnesota Workers' Compensation Act upon the remarriage of his surviving parent.

(2) Whether this court must review its decision in *Redland v. Nelson Quality Eggs, Inc.*, 291 N.W.2d 371 (Minn.1980), and hold that the "mother's insurance benefits" provided under the Social Security Act by 42 U.S.C. § 402(g) (1976 & Supp. III 1979), and received by Sandy Saukkola, be set off against workers' compensation benefits allocated prior to her remarriage.

(3) Whether the Workers' Compensation Court of Appeals properly calculated the dependency benefits to the widow and dependent child, providing appropriate credit for governmental survivor benefits, under *Lemke v. Knudsen Trucking, Inc.*, 291 N.W.2d 378 (Minn.1980).

■ 1. The debate on the first issue focuses on the proper interpretation of Minn. Stat. § 176.111, subd. 11 (1980):

In the case of the remarriage of a dependent surviving spouse without dependent children the dependent surviving spouse shall receive a lump sum settlement equal to two full years compensation. In case of the remarriage of a dependent surviving spouse who has dependent children the compensation which would otherwise become the dependent surviving spouse's due shall be payable to the dependent surviving spouse, guardian, or such other person as the commissioner of the department of labor and industry, compensation judge, or workers' compensation court of appeals in cases upon appeal, orders for the use and benefit of the children during dependency. If the dependency of the children ceases before the equivalent of two years of the dependent surviving spouse's compensation has been paid to the children, the remainder of the two years compensation shall be payable in a lump sum to the dependent surviving spouse without deduction for interest. The payments provided herein shall be paid within 60 days after written notice to the employer of the remarriage or that the dependency of the children has ceased. No dependent surviving spouse who has remarried shall be held to be a dependent surviving spouse without dependent children when the deceased employee leaves any dependent child as defined by this chapter.

The employee died March 31, 1977, obligating the employer to pay 60% of the employee's daily wage at the time of his injury.[1] The statute requires that such an amount be paid to a surviving spouse and one dependent child "for the benefit of such spouse and child." Minn.Stat. § 176.111, subd. 7 (1980). Following the suggestion of Minn.Stat. § 176.111, subd. 10 (1980),[2] the compensation judge allocated ⅔ of the available benefits, or 40% of the employee's

---

1. *See* Minn.Stat. § 176.111, subd. 7 (1980).

2. Subd. 10. Allocation of compensation. In all cases where compensation is payable to the surviving spouse for the benefit of the surviving spouse and dependent children, the commissioner of the department of labor and indus-

try, compensation judge, or workers' compensation court of appeals in cases upon appeal may determine what portion of the compensation shall be applied for the benefit of any such child and may order the same paid to a guardian.

wage, to the widow, and ⅓ of the available benefits, or 20% of the wage, to the dependent child. Such an allocation is in keeping with the legislative determination, evidenced by section 176.111, subdivision 7, that death payments inure to the benefit of the spouse *and* the child.

The Court of Appeals ruled that when Sandy Saukkola remarried her child should be deemed an "orphan" within the purview of Minn.Stat. § 176.111, subd. 12 (1980), and therefore was entitled to 55% of the daily wage at the time of injury. Relators argue that Minn.Stat. § 176.111, subd. 11 (1980), specifically governs the rights and obligations of the parties upon the remarriage of a dependent surviving spouse. In our opinion the relators are correct in this regard and the Court of Appeals erred in its interpretation of the statute.

The critical language of subdivision 11 is the following:

> In case of the remarriage of a dependent surviving spouse who has dependent children the compensation which would otherwise become the dependent surviving spouse's due shall be payable to the dependent surviving spouse, guardian, or such other person as the commissioner of the department of labor and industry, compensation judge, or workers' compensation court of appeals in cases upon appeal, orders for the use and benefit of the children during dependency.

Relators interpret the language to mean that the legislature intended the dependent child to receive what would be in this case a lump sum of $11,175.04 ("the compensation which would otherwise become the dependent surviving spouse's due"). The child would then continue to receive the amount originally allocated to *him* per week during the period of his dependency, in this case $49.75 per week (subject to the yearly Minn. Stat. § 176.645 (1980) adjustment and to setoff for other government survivor benefits.).

Respondent contends that the Court of Appeals was correct in its belief that section 176.111, subdivision 11, "has no application where there are surviving dependent children left to take." This conclusion is in error. Subdivision 11 specifically provides for a payment to a dependent child after remarriage.

Respondent points to some early cases where this court held that a dependent surviving child may be considered an orphan; however, the rationale for finding orphan status in those cases is not present here. In *State ex rel. Radisson Hotel v. District Court of Hennepin County*, 143 Minn. 144, 172 N.W. 897 (1919), the employee, a mother of three children, died from the effects of her work injury. The children's father was alive but had deserted the family prior to the mother's death, truly leaving economic "orphans" behind. Two other cases cited by the respondent, *Johnson v. Munsingwear*, 224 Minn. 551, 29 N.W.2d 822 (1947), and *Johnson v. Munsingwear*, 222 Minn. 540, 25 N.W.2d 308 (1946), found children whose father was still living to be "orphans." Under the law governing those cases, the father was not entitled to dependency benefits under the Act because he was unable to prove that he depended upon his deceased wife for support.

The relators conclude by arguing that the legislature undoubtedly anticipated that surviving spouses with children might remarry. Subdivision 11 represents the legislature's solution to the problem. Its provision for the cessation of workers' compensation benefits to a remarrying spouse indicates a legislative recognition of the spouse's reduced need for benefits upon remarriage. For these reasons, we reverse the Court of Appeals on this issue. The child is not left without compensation under the relators' construction of the statute. Jamie Saukkola will receive the $11,175.04 lump sum payment and continue to receive the same portion of benefits after the remarriage as was allocated to him following his father's death.

■ 2. On the second issue, the relators' position is that, contrary to this court's holding in *Redland*, the legislature did intend to allow a setoff of U.S.C. § 402(g) (1976 & Supp. III 1979) benefits if the de-

pendent surviving spouse *is* responsible for the support of the children.[3]

Regardless of whatever merit there is in relators' arguments for reconsideration of *Redland*, respondent offers two reasons why the court should not reverse the decision at this time. First, policy arguments pro and con on the question of reconsideration of the *Redland* decision were not made or evaluated in the tribunal below. Respondent urges that this court should not reconsider the decision in the absence of a record containing some policy discussion and recounting of actual administrative experience with *Redland*. Second, the respondent believes that because *Redland* was decided February 1, 1980, this court ought to allow the legislature more time to react, if it so desires, to the decision before issuing a re-interpretation.

Both of the respondent's points on this issue are sensible. Reconsideration of *Redland* at this time does seem premature, and this court impliedly gave the legislature the opportunity to react to the *Redland* opinion by speculating about the legislative intent.

■ 3. Respondent wishes to reverse the Workers' Compensation Court of Appeals on the third issue. Respondent seeks to overturn the calculation of the Court of Appeals and have the calculation of the compensation judge reinstated. The compensation judge applied a calculation method illustrated by the final chart contained in the *Lemke* case,[4] while the Court of Appeals used a calculation method based upon an earlier chart in *Lemke*, as well as what it believed to be the enunciated rationale of the opinion. Both the relators and the Court of Appeals suggest that the final chart in *Lemke* is the product of an "inadvertent error." We agree.

In *Lemke* this court said:

We adopt a fourth method which adopts the basic reasoning of the Workers' Compensation Court of Appeals; namely, to find the proportion of the adjusted weekly wage allocated to each group and subtract the government survivor benefits paid to find the upper limit on workers' compensation benefits.

291 N.W.2d at 382. However, in calculating the children's benefits during the period when they, and not their mother, received government survivor benefits, the *Lemke* court submitted a chart that calculated the government survivor benefits against the full weekly wage, rather than the children's allocated portion of the weekly wage. The chart, therefore, fails to include the necessary allocation step in the calculation.

In order to avoid duplication of benefits as required by Minn.Stat. § 176.111, subd. 21 (1980); advocated by Professor Larson in his treatise, 4 A. Larson, *The Law of Workmen's Compensation* § 97.00 (1981); and approved by this court in *Redland* and *Lemke*, the Workers' Compensation Court of Appeals is affirmed on this issue and the errant chart in *Lemke* is hereby disavowed.

Affirmed in part and reversed in part.

KELLEY, J., took no part in the consideration or decision of this case.

---

**3.** The relevant portion of Minn.Stat. § 176.111, subd. 21 (1980), interpreted in *Redland* is:

The combined total of weekly government survivor benefits and workers' compensation death benefits provided under this section shall not exceed 100 percent of the weekly wage being earned by the deceased employee at the time of the injury causing his death; provided, however, that no state workers' compensation death benefit shall be paid for any week in which the survivor benefits paid under the federal program, by themselves, exceed 100 percent of such weekly wage *provided, however, the workers' compensation benefits payable to a dependent surviving* *spouse shall not be reduced on account of any governmental survivor benefits payable to decedent's children if the support of the children is not the responsibility of the dependent surviving spouse.*

(Emphasis added.) This court explained its reasoning in *Redland* by stating that "[t]o hold otherwise would allow one widow who has no children to collect workers' compensation benefits and deny the same to one who does. We do not believe that the legislature intended such a result." 291 N.W.2d at 373.

**4.** *See* 291 N.W.2d at 382 (Minn.1980).